-----------------------------------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,                                      MEMORANDUM
                                                      AND ORDER
                                                      06-CV-1578 (JG) (MDG)

    -against-

FAISAL ZAFAR and SAMEER THAWANI,

        Defendants.

-----------------------------------------------------------x

A P P E A R A N C E S :

    U.S. SECURITIES AND EXCHANGE COMMISSION
        New York Regional Office
        Three World Financial Center
        New York, NY 10281
    By:   Joseph G. Sansone
        George N. Stepaniuk
        Maureen F. Lewis
        Attorneys for Plaintiff

    FAISAL ZAFAR,
        Defendant, *Pro Se*

JOHN GLEESON, United States District Judge:

        On April 6, 2006, the Securities and Exchange Commission ("SEC" or "the Commission") brought this civil action against Faisal Zafar and Sameer Thawani, alleging a conspiracy to fraudulently manipulate the prices of 24 thinly traded "microcap" stocks. On the same day, Safar and Thawani were arrested in connection with parallel criminal charges in this district. *United States v. Zafar*, 06-CR-289 (JG). Zafar was found guilty after a jury trial before me of fifteen counts of securities fraud and one count of conspiracy to commit securities fraud. He was subsequently sentenced to principally a 57-month term of imprisonment.

In this civil action, the SEC now seeks partial summary judgment. Specifically, it seeks (1) an order permanently enjoining Zafar from violating Section 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5; (2) an order requiring Zafar to disgorge his gains from the allegedly fraudulent scheme, plus prejudgment interest; and (3) an appropriate civil monetary penalty. Zafar contends that there is still a genuine issue of material fact regarding the amount of profit he realized through his unlawful conduct. For the following reasons, I grant the government's request for injunctive relief, order disgorgement in the amount of $290,193.14, and impose a civil penalty of the same amount.

On November 26, 2007, Zafar moved for a modification of an earlier order freezing certain of his assets. Because the amount of financial relief awarded to the SEC exceeds the amount of assets frozen, his motion is denied.

## BACKGROUND[1]

On the day the SEC filed its complaint, I entered a Temporary Restraining Order ("TRO") freezing Zafar's and Thawani's assets and enjoining them from continuing the violations alleged in the complaint. On April 28, 2006, the federal grand jury indicted Zafar[2] on a single count of conspiracy to commit securities fraud and 15 counts of securities fraud arising from transactions involving 15 of the 24 stocks mentioned in the civil complaint. On May 5, 2006, I ordered, with defendants' consent, that the asset freeze and other injunctive relief set

---

[1] The following facts, except where otherwise noted, are drawn from the SEC's Statement Pursuant to Local Civil Rule 56.1 In Support of Its Motion for Partial Summary Judgment Against Defendant Faisal Zafar ("SEC Stmt.").

[2] Thawani was not charged by the grand jury, and the SEC has not sought summary judgment against him in this case.

2

forth in the TRO remain in place, as a preliminary injunction, during the pendency of the criminal case.

At trial, the government presented evidence that, between November 2004 and April 2006, Zafar knowingly and unlawfully manipulated the stock prices of the 15 companies identified in the indictment. Pursuant to Federal Rule of Evidence 404(b), it also presented evidence of Zafar's manipulation of two additional stocks. The trial evidence demonstrated that, with regard to each of the 17 companies, Zafar engaged in a "pump and dump" scheme, purchasing shares of stock at the prevailing market price, knowingly making or causing to be made material false statements about the value of the stock, and then selling his shares at the higher prices after the false statements were made. On June 12, 2007, a jury found Zafar guilty of all sixteen counts.

On September 28, 2007, Zafar was sentenced. The parties disputed the magnitude of the loss caused by Zafar's crimes. The government argued that under United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(b)(1), Zafar's offense level should be increased by 14 based on a loss of more than $400,000 but less than $1,000,000. Gov't Letter 1-2, *United States v. Zafar*, 06-CR-289 (E.D.N.Y. Sept. 11, 2007). Relying on Application Note 3(B) of Section 2B1.1, the government contended that the gain from the offense was a proper measure of loss because the actual amount of loss could not be reasonably ascertained. *Id.* The government contended that Zafar's "illegal trading profits from his manipulation of the fifteen stocks expressly named in the indictment total $621,031," and that his "illegal trading profits from his manipulation of the additional two stocks as to which the government presented evidence at trial . . . total $34,775." SEC Stmt. ¶ 28. The Presentence Report (PSR) stated that Zafar's trading

profits from the manipulation of the 24 stocks referenced in the civil complaint total $762, 159. *Id.* at ¶ 31. The PSR also stated that Thawani made $153,811 by illegally manipulating the stocks referenced in the civil complaint, bringing the total of Zafar and Thawani's profits to $915,970. *Id.*

In his objections to the PSR, Zafar argued that the probation office's profit calculations (1) involved stocks not contained in the indictment; (2) included profits made by Thawani, who was not convicted of any crimes; (3) did not include any losses sustained by Zafar; (4) ignored the fact that some of Zafar's profits came from increases in stock prices that were not caused by his false statements; and (5) ignored the possibility that some of Zafar's profits resulted from the legitimate use of stock-trading software. Based on these contentions, Zafar submitted "that a more appropriate enhancement would be 12 levels based on a profit of more than two hundred thousand but less than four hundred thousand." Request for Adjournment and Pre-Sentence Response 2, *United States v. Zafar*, No. 06-CR-289 (JG) (E.D.N.Y. Aug. 17, 2007).

I determined that a 14-level enhancement was appropriate. I found that the profit calculation contained in the PSR was a "reasonable estimate as to the amount of loss," and I noted that even if Zafar's actual profit was only half of the government's estimate, the 14-level enhancement would still apply. Sept. 28, 2007 Tr. 23, *United States v. Zafar*, No. 06-CR-289 (E.D.N.Y. Sept. 28, 2007). Based on those findings, Zafar's advisory guidelines sentence range was 46 to 57 months, and I sentenced him to 57 months in the custody of the Attorney General, five years of supervised release, $1,600 in special assessments, and restitution in the amount of $85,082.09. *Id.* at 33. On September 4, 2008, the court of appeals affirmed Zafar's conviction

and sentence by summary order. *United States v. Zafar*, No. 07-4345-cr, 2008 WL 4138219 (2d Cir. 2008).

On November 11, 2008, the SEC filed the instant motion for partial summary judgment. It argues that it is entitled to the relief it seeks as a matter of law following Zafar's conviction and my findings during sentencing. Zafar did not file a formal response to the motion. On November 17, 2008, I received a letter by fax from Mishal Zafar, the defendant's wife, indicating that he had recently been transferred to MDC Brooklyn and requesting a four-week enlargement of time to file a response. I denied the motion without prejudice to renewal at oral argument and directed that Zafar be produced in court for the argument on December 12, 2008. Zafar argued that the government's calculations overstated the profits he realized through his fraud. He asserted that the profits he made by trading the named stocks at the time he made false statements about those stocks amounted to only $290,000, and that any other profits he made by trading those stocks are not relevant for calculating disgorgement or civil penalties.

While Zafar's appeal was pending, he sought access to some of the funds covered by the May 2006 preliminary injunction and asset freeze. In a letter motion filed on November 26, 2007, he sought approximately $2,400 in living expenses, $12,000 per month in legal expenses relating to the civil case, and $5,000 to pay for an expert witness in the civil action. On November 30, 2007, I referred this motion to Magistrate Judge Marilyn D. Go for a report and recommendation. During a December 5, 2007 hearing on this motion, Judge Go directed Zafar to submit an accounting statement addressing the amount of profits he realized by trading the 15 stocks mentioned in the indictment. In a letter dated December 28, 2007, Zafar submitted a letter stating that the total profit made on these stocks was $290,193.14. The government responded

5

that the true calculation of Zafar's ill-gotten gains should include all profits from trades made during the period of the fraudulent scheme alleged in the indictment, from November 2004 through April 2006.

On November 24, 2008, Judge Go issued a Report and Recommendation ("R&R") recommending that I deny Zafar's motion. Judge Go concluded that "the Commission has provided sufficient evidence, based on evidence presented in the criminal trial of defendant, that his ill-gotten gains from his fraudulent scheme involving the same 15 stocks that are at issue in this civil case totaled $621,032." R&R 8. Because the SEC was seeking disgorgement in this amount, and the total value of the frozen assets was $502,408, Judge Go concluded that "the asset freeze should remain unchanged in order to preserve the already limited funds that may be used to satisfy any future disgorgement order." *Id.* at 9. Judge Go also noted that, even if Zafar's profit calculation was correct, the SEC could seek, in addition to disgorgement, a civil penalty equal to the amount of profit. Accordingly, assuming $290,000 of gain and an identical amount in civil penalty, "the amount frozen is still insufficient to satisfy any award that the Commission could recover in this case." *Id.*

On December 5, 2008, Mishal Zafar faxed me a letter requesting that, despite Judge Go's recommendation, I carve out some amount of assets for living expenses for her and her two young children. At the December 12 oral argument on the summary judgment motion, Zafar requested additional time to file a formal objection to the report and recommendation. He indicated that his objection would be based on his calculation of his "ill-gotten" profits. Dec. 12 Tr. 15 ("As far as that motion goes, . . . I'm basing it on the same principle that I just discussed as far as the 290,000, because I was given a differentiation of several hundred thousand, which

6

would basically leave some money that's not considered fraud, which I can use for defense and help myself.") I allowed Zafar to file any additional objections by two weeks from the date of oral argument. No such objections have been filed.

DISCUSSION

A. *The Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994) ("[T]he burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists." (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975))). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586. Summary judgment is proper when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citations omitted).

B.   *Issue Preclusion/Collateral Estoppel*

The SEC contends that it is entitled to summary judgment because all of the material facts that would entitle it to the relief it seeks were litigated and decided against Zafar in the criminal proceeding. "Under the doctrine of offensive collateral estoppel (more recently called offensive issue preclusion), a plaintiff may foreclose a defendant from relitigating an issue the defendant has previously litigated but lost against another plaintiff." *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 303 (2d Cir. 1999). Generally, for issue preclusion to apply, "(1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Id.* at 304.

The preclusion inquiry is even more searching when, as here, the plaintiff seeks to give preclusive effect to sentencing findings. The Second Circuit has held that "precluding relitigation on the basis of such findings should be presumed improper," and that the doctrine of issue preclusion "should be applied only in those circumstances where it is clearly fair and efficient to do so." *Id.* at 306. Furthermore, "the burden should be on the plaintiff in the civil case to prove these elements" of fairness and efficiency. *Id.*

In essence, the SEC argues that Zafar is collaterally estopped from arguing six issues relevant to the motion for summary judgment: (1) that Zafar engaged in securities fraud with respect to the 15 stocks named in the indictment; (2) that his gain from this fraud was $621,031; (3) that Zafar enaged in securities fraud with respect to the two additional stocks on which evidence was introduced at trial; (4) that his gain with respect to those two stocks was $34,775; (5) that he engaged in securities fraud with regard to the remaining seven stocks mentioned in the criminal complaint; and (6) that his gain with respect to those stocks was $106,352.

The first issue is clearly precluded by the jury verdict. In Zafar's criminal trial, he was charged with fraudulent manipulation of each of the 15 securities, he had the opportunity to contest those charges at a fair trial, and the jury could not have rendered its verdict without finding that he engaged in fraudulent conduct regarding those securities with the requisite scienter.

The remaining issues, however, were not precluded by the judgment of conviction. None of the loss amounts were necessary to support a final and valid judgment of conviction, because the existence of a specific amount of profit or loss is not an element of any of the charges of conviction. Similarly, the jury did not need to conclude that Zafar engaged in securities fraud with regard to the two stocks that were the subject of the Rule 404(b) evidence in order to find him guilty of any of the charged counts. Finally, because no evidence was introduced at the criminal trial regarding the remaining seven stocks mentioned in the civil complaint, no finding involving those stocks was even made by the jury, let alone necessary to the judgment of conviction.

Therefore, the doctrine of issue preclusion either applies as a result of my findings at sentencing or does not apply at all. However, as mentioned above, such findings are presumed non-preclusive, and the burden is on the plaintiff to show that it is "clearly fair and efficient" to override this presumption. *Monarch Funding Corp.*, 192 F.3d at 306.

The SEC has failed to carry this burden. Its memorandum of law does not mention the *Monarch* presumption. At oral argument, the Commission argued only that the resolution of these issues was necessary to the sentence imposed, while the issues the plaintiff sought to preclude in *Monarch* were not necessary to the sentencing judge's findings in that case. Dec. 12 Tr. 6. Even if this argument is correct, it does not establish that applying issue preclusion here would foster judicial economy. Accordingly, the presumption against the preclusive effect of sentencing findings applies here.

C.  *The Relief Requested by the SEC*

Having determined the preclusive effect of Zafar's conviction and sentencing, I next address whether the SEC is entitled to summary judgment as to the three categories of relief it seeks.

1.  *The Permanent Injunction*

> Injunctive relief is expressly authorized by Congress to proscribe future violations of federal securities laws. The SEC must demonstrate that there is a substantial likelihood of future violations of illegal securities conduct. The court looks at the following factors: the fact that the defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an isolated occurrence; whether the defendant continues to maintain that his past conduct was blameless; and whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

*SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998) (internal citations and quotation marks omitted).

The SEC has demonstrated that the first four factors militate in favor of an injunction. Zafar was convicted of conspiracy to commit securities fraud and 15 counts of securities fraud and, as discussed above, is precluded from relitigating his liability for those violations here. The sheer number of counts demonstrates that these violations were not isolated occurrences, as does the lengthy period over which the crimes were committed. Finally, Zafar has a 1996 conviction for attempted possession of a forgery device. Pre-Sentence Report 14 . Furthermore, I noted at sentencing that Zafar was "not anywhere close to holding [him]self accountable" for his actions, Sept. 28, 2007 Tr. 33, *United States v. Zafar*, and there is no indication that he has subsequently expressed remorse for his conduct.

As to the final factor, the SEC does not argue that Zafar, "because of his professional occupation, . . . might be in a position where future violations could be anticipated." *Cavanagh*, 155 F.3d at 135. Zafar worked for the Nassau County Department of Parks, Recreation and Museums as a rink guard prior to his conviction, PSR 20, he is currently serving his sentence, and there is no indication that he intends to enter a profession particularly conducive to securities fraud following his release. However, this factor seems minimally probative of the likelihood of future illegal conduct when, as in this case, the defendant's professional status was irrelevant to his past criminal conduct. This is not a case like *Cavanagh*, where the defendant, a lawyer specializing in securities transactions, used his license to practice law in order to commit fraud. *See id.* at 135. In such cases, professional sanctions such as the loss of a license may provide sufficient protection from future violations; no such protection is available here. The SEC has demonstrated a substantial likelihood of future illegal conduct, and Zafar has done nothing to rebut this showing. Accordingly, I order that Zafar be permanently

enjoined from committing future violations of the Securites Act, the Exchange Act, and Rule 10b-5.

    2.    *Disgorgement of Profits and Prejudgment Interest*

"In the exercise of its equity powers, a district court may order the disgorgement of profits acquired through securities fraud." *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995). "Disgorgement need only be a reasonable approximation of profits causally connected to the violation." *Id.* (internal quotation marks omitted). Zafar does not dispute that an order of disgorgement is appropriate in this case. He argues only that the SEC's approximation of the "profits causally connected to" his securities violations ($762,159) is unreasonable.

At oral argument, Zafar argued that the amount of profit caused by his violations was approximately $290,000. This argument apparently refers to the accounting he prepared in connection with his motion to modify the asset freeze, in which he calculated his profits stemming from the violations charged in the criminal indictment as $290,193.14. With regard to the 15 stocks named in the indictment, Zafar's principle contention is that many of the trades relied on by the SEC in its calculations were too remote from Zafar's false statements regarding those securities to constitute profits from Zafar's proven criminal conduct. With regard to the remaining stocks, Zafar contends that the SEC has thus far failed to prove that he engaged in securities fraud regarding those securities.

The SEC contends only that Zafar is estopped from raising these arguments because I adopted the government's profit calculations (as the proper measure of loss) at sentencing. As discussed above, however, this argument is unavailing because the SEC has failed to demonstrate that my sentencing findings should be given preclusive effect. In light of

12

the accounting submitted by Zafar, the SEC has failed to demonstrate the absence of a genuine issue of material fact on the issue of whether Zafar's profit from his illegal conduct exceeded $290,193.14. *See Cronin*, 46 F.3d at 203 ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.") By corollary, however, it is undisputed that Zafar realized at least $290,193.14 in ill-gotten gains. Accordingly, I find that partial summary judgment ordering disgorgement in this amount is appropriate. *See* Fed. R. Civ. P. 56(a) ("A party claiming relief may move . . . for summary judgment on all *or part of the claim*.") (emphasis added).

The SEC also asks me to order Zafar "to pay prejudgment interest on the full amount of his ill-gotten gains." SEC Mem. 17. According to the SEC, the amount of prejudgment interest that has accrued from the time of Zafar's trades through September 2008, using the IRS tax underpayment rate, is $181,192. However, as discussed above, this calculation is based on an amount of profit as to which Zafar has raised a triable issue, and Zafar has not conceded the propriety of any amount of prejudgment interest. Furthermore, while I could, *sua sponte*, calculate the amount of interest arising from Zafar's concededly ill-gotten profits through April 2006, it is not clear that prejudgment interest should be awarded for the period during which all of Zafar's assets were frozen. As the SEC observes, prejudgment interest is equitable when "it deprives a defendant of an interest-free loan in the amount of his or her ill-gotten gains, thereby preventing further unjust enrichment." *Id.* However, it would appear that, beginning in April 2006, the preliminary injunction sufficed to deprive Zafar of that potential benefit. While it is proper to award prejudgment interest for the "entire period" during which the defendant

"had use of unlawful profits," *SEC v. Warde*, 151 F.3d 42, 50 (2d Cir. 1998), the SEC has thus far failed to demonstrate that it is appropriate to do so when the defendant is already restrained from using those profits. Accordingly, the SEC's motion for summary judgment on the award of prejudgment interest is denied.

3. *Civil Penalties*

"Whenever it shall appear to the Commission that any person has violated any provision of this subchapter, . . . the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to impose, upon a proper showing, a civil penalty to be paid by the person who has committed such violation." 15 U.S.C. § 77t(d)(1). The statute provides a three-tiered structure for determining the maximum amount of the penalty that may be imposed. The SEC argues that, as a matter of law, Zafar is eligible for a third-tier penalty with respect to the 16 violations for which he was convicted.

I agree. The relevant provision of the statute provides that "the amount of penalty for each such violation shall not exceed the greater of (i) $100,000 for a natural person . . . or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if -- (I) the violation . . . involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and (II) such violation directly or indirectly resulted in substantial losses or created a risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(C). As discussed above, the jury's verdict conclusively established that each of the 16 violations charged in the indictment involved fraud. Furthermore, although Zafar has disputed the exact amount of the loss caused by his violation, he does not dispute that the risk of loss (and the amount of loss actually realized) was substantial, and has actually conceded that he realized almost $300,000 in

gains from his fraud.  Accordingly, I find that Zafar is eligible for a civil penalty as high as $100,000 for each violation, which amounts to a maximum potential penalty of $1,600,000 for the sixteen violations established by his conviction.

"The amount of the penalty shall be determined by the court in light of the facts and circumstances." 15 U.S.C. § 77t(d)(2)(A).  In assessing civil penalties, courts find it particularly instructive to consider the egregiousness of the defendant's conduct; the degree of the defendant's scienter; whether the defendant's conduct was isolated or recurrent; and whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.  *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007).  As discussed above, the first three factors militate in favor of a heavy penalty.  In addition, Zafar concedes that he realized profits of at least of $290,193.14 from his securities violations, and the SEC has seized liquid assets that are nearly sufficient to satisfy a penalty in this amount.  Furthermore, based on Zafar's past attempt to circumvent the asset freeze, his history of fraudulent conduct, and his apparent lack of remorse for his actions, I find that a substantial penalty is needed in order to deter him from future violations of the securities laws and regulations.  Accordingly, pursuant to 15 U.S.C. § 77t, I impose a civil penalty of $290,193.14.

D.  *Zafar's Request to Modify the Asset Freeze*

Prior to the SEC's motion for summary judgment, Zafar moved for a modification of my order freezing certain of his assets.  Upon my referral, Magistrate Judge Go recommended that I deny this motion.  Zafar objected to this recommendation, contending that Judge Go relied on an unreasonably high estimate of the profits Zafar realized through his fraudulent conduct.  However, Zafar is now subject to restitution and disgorgement orders and a civil monetary

15

penalty in excess of the amount subject to the asset freeze. Accordingly, I agree with Judge Go that modification of my order freezing Zafar's assets is inappropriate, and deny his motion.[3]

CONCLUSION

For the reasons set forth above, the motion for summary judgment is granted to the following extent: (1) Zafar is permanently enjoined from committing future violations of the Securites Act, the Exchange Act, and Rule 10b-5; (2) Zafar is ordered to disgorge $290,193.14; and (3) Zafar is ordered to pay a civil penalty of $290,193.14. To the extent that Zafar pays or has paid restitution as ordered in the criminal judgment, such payments will offset his disgorgement obligation under the present judgment. *SEC v. Palmisano*, 135 F.3d 860, 864 (2d Cir. 1998). The motion for summary judgment is denied in all other respects, and the SEC is directed to notify the Court within two weeks whether it desires to seek further relief from Zafar at trial. Zafar's motion to modify my May 5, 2006 order freezing his assets is denied.

So ordered.

JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
      January 20, 2009

---

[3] As Judge Go observed, it is not clear whether her Report and Recommendation is entitled to deference or should be reviewed de novo. *See* R&R 2 n.2. Because, even considering the matter de novo, I agree with her conclusion, I need not resolve this issue.